UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADRIENNE J. LAWRENCE,<br><br>              Plaintiff,<br><br>   v.<br><br>ESPN, INC., MARGARET GREEN, in her individual and professional capacities, DONNA HRICISKO, in her individual and professional capacities, ROBERT GALLO, in his individual and professional capacities, and JOHN OBRINGER, in his individual and professional capacities,<br><br>              Defendants. | CIVIL ACTION NO.<br>3:18-CV-00383-SRU<br><br><br><br>Date:      April 11, 2018 |

**MEMORANDUM OF LAW
IN SUPPORT OF ESPN, INC.'S SPECIAL MOTION
TO DISMISS NINTH CAUSE OF ACTION IN PLAINTIFF'S
<u>COMPLAINT PURSUANT TO CONN. GEN. STAT. § 52-196a</u>**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND INFORMATION .......................................................................2

III.    RELEVANT ALLEGATIONS IN THE COMPLAINT ........................................4

IV.     LEGAL STANDARD.............................................................................................5

V.      ARGUMENT..........................................................................................................7

       A.      Lawrence's False Light Claim Is Based Solely on Protected Activity....................7

             1.      The ESPN Statement and third-party tweets are protected  free
speech...........................................................................................................7

                    a.      The ESPN Statement is protected free speech...............................8

                           (1)      The ESPN Statement was made in a public forum. ............8

                           (2)      The ESPN Statement relates to a matter of public
concern....................................................................................9

                                i.      Lawrence is a public figure.....................................9

                                ii.     The ESPN Statement was related to
community well-being. ..........................................10

                                iii.    The ESPN Statement was related to health
and safety. ..............................................................13

                      b.      The ESPN Statement was also protected by the company's
right to petition the government.....................................................13

                      c.      The Third-Party Twitter statements are protected speech. ............16

       B.      Lawrence Cannot Show Probable Cause That She Will Prevail on the
Merits. .................................................................................................................16

             1.      Connecticut sets a high bar for false light claims. .....................................17

             2.      Lawrence cannot show the ESPN Statement was an actionable
false light invasion of privacy....................................................................20

                      a.      ESPN did not fabricate, rearrange, or create the text
messages. .......................................................................................20

                      b.      The ESPN Statement did not place Lawrence in a false
light because it was true................................................................21

                      c.      The ESPN Statement is not highly offensive to a reasonable
person. ...........................................................................................22

                      d.      ESPN could not have acted with malice because nothing in
the ESPN Statement was false. .....................................................23

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

(continued)

Page

    3.    Lawrence cannot show that the third-party tweets were an actionable false light invasion of privacy. ................................24

        a.    There is no basis for Lawrence's claim that ESPN used bots or fake social media accounts to publish the third-party tweets. ................................24

        b.    The third-party tweets are not actionable.......................24

VI.    CONCLUSION.................................................................................26

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agosto v. Correctional Officers Benevolent Ass'n*,
  107 F. Supp. 2d 294 (S.D.N.Y. 2000) ..................................................................13

*Air Wis. Airlines Corp. v. Hoeper*,
  134 S. Ct. 852 (2014) ..........................................................................................24

*Baiul v. Disson*,
  607 F. App'x 18 (2d Cir. 2015) ............................................................................9

*Bel Air Internet, LLC v. Morales*,
  20 Cal. App. 5th 924 n.4 (2018) ..........................................................................14

*Berry v. Ronald*,
  No. FBTCV175032673, 2018 Conn. Super. LEXIS 324 (Conn. Super. Ct.
  Feb. 20, 2018) ..............................................................................................19, 26

*Bilbrey v. Williams*,
  No. 02-13-00332-CV, 2015 Tex. App. LEXIS 2359 (Tex. App. Mar. 12,
  2015) ...................................................................................................................11

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) .................................................................9

*Blanchard v. Steward Carney Hosp., Inc.*,
  477 Mass. 141 (2017) ..........................................................................................15

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) ..............................................................................13

*Celle v. Filipino Reporter Enters., Inc.*,
  209 F.3d 163 (2d Cir. 2000) .................................................................................9

*Chandok v. Klessig*,
  648 F. Supp. 2d 449 (N.D.N.Y. 2009) ................................................................11

*Cole v. Patricia A. Meyer & Assocs.*,
  APC, 206 Cal. App. 4th 1095 (2012) ...................................................................8

*Colon v. Town of W. Hartford*,
  No. 3:00CV168(AHN), 2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001) .......................25

*ComputerXpress, Inc. v. Jackson*,
  93 Cal. App. 4th 993 (2001) ................................................................................12

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967) (Warren, J., concurring) ........................................................9

*Damon v. Ocean Hills Journalism Club*,
   85 Cal. App. 4th 468 (2000) ...................................................................................12

*Dellacamera v. New Haven Register*,
   No. CV000436560, 2002 Conn. Super. LEXIS 3403 (Conn. Super. Ct. Oct.
   28, 2002) ................................................................................................................19

*Dow v. New Haven Indep., Inc.*,
   41 Conn. Supp. Ct. 31, 38 (1987) ..........................................................................25

*E. R.R.. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ...............................................................................................14

*Ernst v. Kauffman*,
   50 F. Supp. 3d 553 (D. Vt. 2014) ......................................................................6, 12

*Fabbrini v. City of Dunsmuir*,
   544 F. Supp. 2d 1044 (E.D. Cal. 2008) .................................................................15

*Felis v. Downs Rachlin Martin PLLC*,
   200 Vt. 465 (2015) .................................................................................................12

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) .................................................................................................9

*Gleason v. Smolinski*,
   No. NNHCV065005107S, 2009 Conn. Super. LEXIS 1982 (Conn. Super. Ct.
   July 20, 2009) ........................................................................................................22

*Goodrich v. Waterbury Republican-Am., Inc.*,
   188 Conn. 107 (1982) ..................................................................................... *passim*

*Gulrajaney v. Petricha*,
   381 N.J. Super. 241, 885 A.2d 496 (Super. Ct. App. Div. 2005) ...........................13

*Hammond v. Lovings*,
   No. 5:15-CV-00579-RP, 2016 U.S. Dist. LEXIS 187597 (W.D. Tex. May 25,
   2016) ......................................................................................................................13

*Haywood v. St. Michael's Coll.*,
   536 F. App'x 123 (2d Cir. 2013) .............................................................................6

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Haywood v. St. Michael's Coll.*,
  No. 2:12-CV-164, 2012 WL 6552361 (D. Vt. Dec. 14, 2012), *aff'd*, 536 F.
  App'x 123 (2d Cir. 2013) ...................................................................................6, 8

*Hotchner v. Castillo-Puche*,
  551 F.2d 910 (2d Cir. 1977)...............................................................................19, 26

*J.K. Scanlan Co. v. Constr. Grp., Inc.*,
  80 Conn. App. 345, 835 A.2d 79 (2003) ................................................................16

*Johnson v. Fleet*,
  371 F. Supp. 2d 155 (D. Conn. 2005)....................................................................14

*Jonap v. Silver*,
  1 Conn. App. Ct. 550, 557 (1984)..........................................................................17

*Liberty Synergistics Inc. v. Microflo Ltd.*,
  718 F.3d 138 (2d Cir. 2013).....................................................................................6

*Machleder v. Diaz*,
  801 F.2d 46 (2d Cir. 1986).................................................................................17, 22

*Macias v. Hartwell*,
  55 Cal. App. 4th 669 (1997) ...................................................................................12

*Maietta Constr., Inc. v. Wainwright*,
  2004 ME 53.............................................................................................................15

*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (2007) ...................................................................................12

*McKee v. Cosby*,
  874 F.3d 54 (1st Cir. 2017).....................................................................................10

*McNally v. Yarnall*,
  764 F. Supp. 838 (S.D.N.Y. 1991)..........................................................................11

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974)................................................................................................18

*Miles v. City of Hartford*,
  719 F. Supp. 2d 207 (D. Conn. 2010)................................................................17, 25

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
  759 F.2d 219 (2d Cir. 1985)....................................................................................26

**ORAL ARGUMENT REQUESTED**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nader v. Me. Democratic Party,*
2012 ME 57......................................................................................................................14

*Netscout Sys. v. Gartner, Inc.,*
No. FSTCV146022988S, 2015 Conn. Super. LEXIS 3147 (Conn. Super. Ct.
Dec. 15, 2015).................................................................................................................19

*Packingham v. North Carolina,*
137 S. Ct. 1730 (2017)......................................................................................................8

*Perks v. Town of Huntington,*
251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ..........................................................................10

*Rweyemamu v. Cote,*
520 F.3d 198 (2d Cir. 2008)............................................................................................14

*Smith v. Pocono Country Place Prop. Owners Ass'n,*
686 F. Supp. 1053 (M.D. Pa. 1987).................................................................................12

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
864 F.3d 236 (2d Cir. 2017).............................................................................................24

*Thames Talent, Ltd. v. Comm'n on Human Rights & Opportunities,*
265 Conn. 127 (2003) ................................................................................................11, 15

*Watson v. Hardman,*
497 S.W.3d 601 (Tex. App. 2016)..................................................................................11

*Wright Dev. Grp., LLC v. Walsh,*
238 Ill. 2d 620 (2010) .....................................................................................................14

**Statutes**

Conn. Gen. Stat. Ann. § 52-196a(a)(2).........................................................................5, 7

Conn. Gen. Stat. § 52-196a.......................................................................................1, 2, 16

Conn. Gen. Stat. § 52-196a(a)(1)...........................................................................5, 9, 10

Conn. Gen. Stat. § 52-196a(a)(3)..............................................................................5, 13

Conn. Gen. Stat. § 52-196a(a)(5)(b) ...............................................................................5

Conn. Gen. Stat. § 52-196a(e)(3)..............................................................................6, 16

Conn. Gen. Stat. § 52-196a(f)(1) .....................................................................................6

**ORAL ARGUMENT REQUESTED**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Conn. Gen. Stat. § 52-278d(a) ............................................................................................16

Restatement (Second) of Torts § 652G (Am. Law Inst. 1977).......................................19

**Other Authorities**

A.J. Perez, ESPN's Jemele Hill denies Chris Berman left 'racially disparaging'
   voicemail (Mar. 5, 2018),
   https://www.usatoday.com/story/sports/2018/03/05/espn-jemele-hill-denies-
   chris-berman-left-racially-disparaging-voicemail/397635002/ ..................................5

*Community*, *Black's Law Dictionary* (10th ed. 2014) ..................................................11

Corporate Announcements, ESPN's Statement on Boston Globe Story (Dec. 14,
   2017), https://espnmediazone.com/us/press-releases/2017/12/espns-statement-
   boston-globe-story/ ........................................................................................................3

Jenn Abelson, At ESPN, the problems for women run deep, *Boston Globe* (Dec.
   14, 2017) ................................................................................................ *passim*

Jenn Abelson, Read the text messages at the center of the ESPN harassment
   complaint, *Boston Globe* (Dec. 15, 2017).....................................................................3

Joanna M. Burkhardt, Social Media Bots, *American Libraries Magazine*, Mar. 1,
   2018, https://americanlibrariesmagazine.org/2018/03/01/social-media-bots/ ..........4

Moore's Federal Practice - Civil § 1.05.........................................................................6

Nicholas Confessore, et al., The Lucrative Business of Fake Social Media
   Accounts CNBC (Jan. 28, 2018, 2:07 PM),
   https://www.cnbc.com/2018/01/28/the-lucrative-business-of-fake-social-
   media-accounts.html ......................................................................................................4

Statement of Rep. William Tong, Connecticut House Transcript, 6/5/2017 ...................5

U.S. CONST. amend. I.................................................................................14, 18, 19, 25

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW

I.   **INTRODUCTION**

With her administrative charge against ESPN pending, Plaintiff Adrienne Lawrence chose to wage a public war of words against the company through an interview with the *Boston Globe*.  Among other things, Lawrence claimed that ESPN employee John Buccigross sent her unsolicited and inappropriate text messages.  ESPN responded by publishing the relevant text messages, refuting Lawrence's mischaracterization of her relationship and communications with Buccigross.  Now, in the face of public criticism that she misrepresented facts to the *Boston Globe*, Lawrence is attempting to use this court to silence ESPN.  But Connecticut law does not allow her to punish the company for exercising its constitutionally protected rights to free expression and to petition the government.

Lawrence's false light claim must be dismissed pursuant to Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a.  This statute protects parties from meritless, harassing lawsuits designed to chill their public expression.  In order to survive the anti-SLAPP motion, Lawrence must show probable cause that she will prevail on her false light claim.  She cannot. Her claim is deficient as a matter of law because the excerpted text messages published by ESPN are accurate and no reasonable person would find them highly offensive.  In the face of this undeniable fact, Lawrence attempts to bolster her claim and seize more headlines with an untethered conspiracy theory that ESPN deployed bot armies and fake Twitter accounts to condemn her.  Setting aside the facial absurdity of this claim, the complaint reveals that the statements from these accounts were textbook expressions of constitutionally-protected opinion.

**ORAL ARGUMENT REQUESTED**

Lawrence's complaint targets free speech while enjoying its protections. Her frustration with ESPN's truthful public statements does not trump the company's right to make them. And her distaste for the public response cannot justify a chilling of ESPN's constitutional rights. Lawrence's false light claim should be dismissed with prejudice.

## II.   <u>BACKGROUND INFORMATION</u>

ESPN is a leader in sports entertainment media.  *See, e.g.*, Compl. ¶ 7 (At ESPN, Lawrence worked in "Digital Media, Radio . . . and Studio Production" and made an impact on "SportsCenter and other ESPN news platforms"), ¶ 24 (describing ESPN as one of the "powerful brands in sports and in media"), ¶ 86 (referring to ESPN's "domination of the sports media market"), ¶ 112 (the goal of the Fellowship was to help diverse candidates "seeking careers in a sports-media environment"); Section IV (alleging that ESPN defamed Lawrence "in the media" by publishing a statement on its website, ESPN Media Zone).

The company works constantly to highlight and provide platforms for underrepresented voices in the industry. In 2015, ESPN hired Adrienne Lawrence as a participant in the "ESPN the Fellowship" program, under a two-year term contract. *Id.* ¶¶ 111–12, 254. Among other things, the purpose of the fellowship was to provide participants with exposure to a wide array of opportunities at ESPN. *Id.* ¶ 112. As a result, Lawrence's duties were inherently fluid and varied. *Id.* In late 2016 and early 2017, ESPN developed a new content strategy that called for substantial changes in its workforce. *Id.* ¶ 234 n.41. As a result, in or around April 2017, the company reduced its talent by more than 100. *Id.* Lawrence's term contract was set to expire on August 9, 2017, and, as part of the talent reduction, she was not offered a new contract. *Id.* ¶ 254.

**ORAL ARGUMENT REQUESTED**

Now, Lawrence's complaint attempts to allege a connection between the company's decision and concerns that Lawrence raised back in October 2016 about a rumor that she and John Buccigross were dating.  *Id.*, Section III.  The company timely investigated the rumor but was unable to identify its source.  Lawrence *did not identify* anyone else who had heard or spoken it.  Lawrence later raised concerns about some text messages that she and Buccigross exchanged.  *Id.* ¶¶ 171–72.  The company investigated those concerns as well, but Lawrence *refused to meet* with the senior investigator and *did not provide* any of the messages.  *Id.* ¶ 188.  Stymied by Lawrence's refusal to meaningfully participate, the investigation revealed no evidence of wrongdoing.  *Id.* ¶¶ 194–96.

In August 2017, Lawrence filed an administrative charge with the Connecticut Human Rights Organization and the Equal Employment Opportunity Commission.  *Id.* ¶¶ 34; 36.  CHRO issued a notice of right to sue letter to Lawrence on December 5, 2017.  *Id.* ¶ 35, Ex. A.  Then on December 14, 2017, while Lawrence's charge was still pending before the EEOC, the *Boston Globe* published an article describing her allegations about her relationship with Buccigross.[1]  *Id.* ¶ 36, Ex. B (EEOC Release of Jurisdiction dated Jan. 29, 2018); and ¶ 271.  Lawrence's statements, as relayed in the article, were inaccurate and misleading.  So that evening, after a slew of requests for comment, ESPN reported on its "ESPN Media Zone" website the company's position with respect to Lawrence's allegations and published "portions of text messages exchanged between Ms. Lawrence" and Buccigross (together, the "ESPN Statement").[2]  *Id.* ¶

---

[1] *See* Jenn Abelson, <u>At ESPN, the problems for women run deep</u>, *Boston Globe* (Dec. 14, 2017), https://www.bostonglobe.com/sports/2017/12/14/women-who-worked-espn-say-its-problems-far-beyond-barstool-sports/L1v9HJIvtnHuBPiMru6yGM/story.html, attached to the concurrently filed Declaration of Raymond W. Bertrand ("Bertrand Decl.") as Exhibit A.
[2] *See* Corporate Announcements, <u>ESPN's Statement on Boston Globe Story,</u> (Dec. 14, 2017), https://espnmediazone.com/us/press-releases/2017/12/espns-statement-boston-globe-story/, Bertrand Decl. Ex. B.

**ORAL ARGUMENT REQUESTED**

273.  The next day, the *Boston Globe* published the full set of the text messages.[3]  Comparing the text messages with Lawrence's claims, many members of the public voiced their opinion that Lawrence misrepresented her interactions with Buccigross.  *Id.* ¶ 277.  Rather than addressing or accepting this criticism as part of an open exchange of ideas, Lawrence now speculates that the Twitter accounts that criticized her are bots[4] and fake accounts[5] directed by ESPN to "spread vile commentary about her . . . and to manufacture and encourage support for Buccigross."  Compl. ¶ 276.  Lawrence cannot prevail on the merits of her false light claim; it serves only to punish ESPN for exercising its constitutionally protected rights and to prevent the company from doing so in the future.

## III.    RELEVANT ALLEGATIONS IN THE COMPLAINT

Lawrence's complaint alleges that on December 14, 2017, after the *Boston Globe* report in which Lawrence claimed that Buccigross sent her inappropriate text messages, the company "attacked Ms. Lawrence by fraudulently redacting and rearranging the text messages" and publishing them.  Compl. ¶¶ 271–72.  According to the complaint, the company's goal was to "discredit Ms. Lawrence and to fuel hatred and disdain toward her."  *Id.* ¶ 274.

The complaint further alleges that ESPN utilized bots and fake social media accounts to discredit Lawrence and her allegations.  *Id.* ¶¶ 275–76.  Pasted within the body of the complaint

---

Lawrence's complaint correctly states that the ESPN Statement was published the evening of December 14, 2017, notwithstanding the date listed on the website.  Compl. ¶ 273.

[3] *See* Jenn Abelson, Read the text messages at the center of the ESPN harassment complaint, *Boston Globe* (Dec. 15, 2017), https://www.bostonglobe.com/metro/2017/12/15/read-text-messages-center-espn-harassment-complaint/3HBxspKQCUvK4Pkz2TU8sL/story.html, Bertrand Decl. Ex. C.

[4] "Bots are automatic software programs that perform repetitive tasks to gather data from the internet. . . . [i]n social media, bots collect information that might be of interest to users by crawling the internet for specific information and sharing it on sites like Facebook and Twitter."  Joanna M. Burkhardt, Social Media Bots, *American Libraries Magazine*, Mar. 1, 2018, https://americanlibrariesmagazine.org/2018/03/01/social-media-bots/.

[5] Fake social media accounts pose and act like real users, are sometimes operated by bots, and are often built on stolen identities. Nicholas Confessore, et al., The Lucrative Business of Fake Social Media Accounts, CNBC (Jan. 28, 2018, 2:07 PM), https://www.cnbc.com/2018/01/28/the-lucrative-business-of-fake-social-media-accounts.html

**ORAL ARGUMENT REQUESTED**

are a handful of tweets[6] from five Twitter accounts, which the complaint identifies as ESPN bots and fake social media accounts.[7] *Id.* ¶ 276.  The complaint offers no basis—plausible or otherwise—for Lawrence's purported belief that any of these accounts are bots or fake, let alone that ESPN played any role in the statements made from them.[8]

## IV.   LEGAL STANDARD

Connecticut's anti-SLAPP law protects speech that is "based on the . . . exercise of [the defendant's] right of free speech, [or] right to petition the government . . . in connection with a matter of public concern[.]"  Conn. Gen. Stat. § 52-196a(a)(5)(b).  The statute empowers parties to attack claims "designed to chill free speech and the expression of constitutional rights" by filing a "special motion to dismiss . . . a frivolous or abusive claim that has no merit."  Statement of Rep. William Tong, Connecticut House Transcript, 6/5/2017.[9]

The law protects two categories of conduct relevant here.  First, it protects ESPN's exercise of free speech, which includes any communication "or conduct furthering communication, in a public forum on a matter of public concern."  Conn. Gen. Stat. Ann. § 52-196a(a)(2).  Matters of public concern include any issue related to a "public figure", "health or safety", or "community well-being."  *Id.* § 52-196a(a)(1).  Second, the statute protects ESPN's "[r]ight to petition the government," which includes any "communication in connection with an

---

[6] A "tweet" is a statement of 280 characters or less, made on the website platform known as Twitter.
[7] The Complaint references "social media platforms" generally, but does not identify or provide examples of statements made on any social media platform other than Twitter.  *Id.* ¶ 276.
[8] Indeed, independent media organizations have already confirmed that some of the accounts are run by "humans not connected to ESPN" and are "not bot accounts run by automated software."  A.J. Perez, <u>ESPN's Jemele Hill denies Chris Berman left 'racially disparaging' voicemail</u>, (Mar. 5, 2018), https://www.usatoday.com/story/sports/2018/03/05/espn-jemele-hill-denies-chris-berman-left-racially-disparaging-voicemail/397635002/.
[9] Though the anti-SLAPP statute provides that a special motion to dismiss may be brought against "a complaint," the bill's legislative history reveals the General Assembly's intention that "the special motion to dismiss . . . if granted, . would dispose *only of the claim* to which the special motion to dismiss applies." Rep. Tong. Connecticut House Transcript, 6/5/2017 (emphasis added).

**ORAL ARGUMENT REQUESTED**

issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body."  Conn. Gen. Stat. § 52-196a(a)(3).

The statute prescribes a two-step approach.  The defendant must first "make[] an initial showing, by a preponderance of the evidence" that the plaintiff brought a claim "based on the [Defendant's] exercise of its right of free speech, right to petition the government, or right of association . . . in connection with a matter of public concern."  Conn. Gen. Stat. § 52-196a(e)(3).  The Court must then dismiss the claim unless the plaintiff: (1) alleges "with particularity" the facts that gave rise to her claim; and (2) "demonstrates . . . that there is probable cause" she would "prevail on the merits."  *Id.*  Upon granting an anti-SLAPP motion, the Court must award to "the moving party costs and reasonable attorney's fees."  Conn. Gen. Stat. § 52-196a(f)(1).

An anti-SLAPP statute is not merely procedural— "it embodies *a substantive policy* of the state."  Moore's Federal Practice - Civil § 1.05 (emphasis added).  "When state law claims are asserted in federal court . . . the majority rule and the better rule is that any early disposition of the state claims is governed by an applicable anti-SLAPP statute."  *Id.*  The Second Circuit follows the majority rule.  *See, e.g.*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 157 (2d Cir. 2013); *Haywood v. St. Michael's Coll.*, 536 F. App'x 123, 124 (2d Cir. 2013); *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 559 (D. Vt. 2014).  Accordingly, Connecticut's anti-SLAPP statute applies to Lawrence's false light claim.[10]

---

[10] No published decisions have yet probed the boundaries of Connecticut's anti-SLAPP statute, so "any analysis must begin with the text of the statute, as well as persuasive authority from other jurisdictions interpreting analogous statutes and any other 'sources on which the state's highest court might rely.'"  *Haywood v. St. Michael's Coll.*, No. 2:12-CV-164, 2012 WL 6552361, at *14 (D. Vt. Dec. 14, 2012), *aff'd*, 536 F. App'x 123 (2d Cir. 2013) (*quoting F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 71 (2d Cir. 2000)).

**ORAL ARGUMENT REQUESTED**

## V.   ARGUMENT

### A.   Lawrence's False Light Claim Is Based Solely on Protected Activity.

Lawrence's false light claim arises exclusively from the ESPN Statement and the third-party tweets referenced in the complaint.  Both are protected under Connecticut's anti-SLAPP statute.  The ESPN Statement is protected free speech because it was made in a public forum and was about: (1) Lawrence, a public figure; (2) the well-being of the community of ESPN's employees, consumers, and shareholders; and (3) a significant issue of health and safety.  The ESPN Statement is also protected by the company's right to petition the government because it was issued in connection with a matter under consideration by an administrative governmental body.  The third-party tweets were not authored or directed by ESPN.[11]  Even if Lawrence had sued the authors of these tweets, her claim would fail because they are protected speech.  Like the ESPN Statement, they were made in a public forum concerning a public figure, the well-being of the ESPN community, and the health and safety of others.

### 1.   The ESPN Statement and third-party tweets are protected free speech.

Connecticut's anti-SLAPP statute protects as free speech any communications made "in a public forum on a matter of public concern."  Conn. Gen. Stat. § 52-196a(a)(2).  The ESPN Statement and the third-party tweets are both protected free speech under the statute.

---

[11] No finding on this fact is necessary for the Court to grant this motion.  However, to the extent the Court opts to permit limited discovery before ruling, ESPN reserves the right to submit sworn declarations and other evidence to establish that the company has no connection whatsoever to these accounts.

**ORAL ARGUMENT REQUESTED**

      **a.**       **The ESPN Statement is protected free speech.**

      **(1)**       **The ESPN Statement was made in a public forum.**

A website accessible to anyone with an internet connection is the quintessential modern-day public forum. *Packingham v. North Carolina,* 137 S. Ct. 1730, 1735 (2017) (defining a public forum as a place "all persons have access to . . . speak and listen, and then, after reflection, speak and listen once more" and noting that "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear.  It is cyberspace—the 'vast democratic forums of the Internet' in general.") (citation omitted).  Although the term "public forum" is not defined in the Connecticut statute, other jurisdictions with anti-SLAPP statutes interpret the term broadly and, at a minimum, as including internet websites accessible to the public.  *See, e.g., Cole v. Patricia A. Meyer & Assocs.*, APC, 206 Cal. App. 4th 1095, 1121 (2012) ("An Internet Web site that is accessible to the general public is a public forum.") (citations omitted); *Haywood v. St. Michael's Coll.*, 2012 WL 6552361, at *15 (D. Vt. Dec. 14, 2012), *aff'd*, 536 F. App'x 123 (2d Cir. 2013) (holding that a profile of a candidate published on an internet website "took place in a public forum" where "access to the website on which the Profile was published" was not "restricted or limited").

ESPN released its statement on Lawrence's *Boston Globe* allegations, including portions of her messages with Buccigross, through its website ESPN Media Zone.  Compl. ¶ 273; Bertrand Decl. Ex. B.  The ESPN Media Zone website is accessible to anyone with an internet connection.  Thus, the ESPN Statement was made in a public forum.

**ORAL ARGUMENT REQUESTED**

**(2)    The ESPN Statement relates to a matter of public concern.**

Matters of public concern include issues "related to . . . health or safety . . . community well-being . . . [or a] public figure."  Conn. Gen. Stat. § 52-196a(a)(1).  The ESPN Statement is a textbook example of speech concerning a matter of public concern.

**i.    Lawrence is a public figure.**

The ESPN Statement is related to a matter of public interest because it concerns Lawrence, who is a public figure.  A person becomes a public figure either by "achiev[ing] such pervasive fame or notoriety that [she] becomes a public figure for all purposes and in all contexts," or, perhaps "[m]ore commonly," when she "voluntarily injects [her]self or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Lawrence is a public figure because she identifies herself as a distinguished anchor, journalist, and legal analyst regarding sexual assault issues.  Compl. ¶ 114; *see Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (Plaintiff's "own characterization of himself as a 'well known radio commentator' within the Metropolitan Filipino-American community" showed "that he is a public figure"); *Baiul v. Disson*, 607 F. App'x 18, 20 (2d Cir. 2015) (plaintiff's statements that she is "'a superstar in the world of figure skating,' and a 'global entertainer'" made her a public figure); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 272 (S.D.N.Y. 2013) ("Even those controversies that engage a 'specialized' audience can still be considered 'public' in nature."); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 164 (1967) (Warren, J., concurring) ("'[P]ublic figures' have as ready access as 'public officials' to mass media of communication, both to influence policy and to counter criticism of their views and activities.").

-9-

**ORAL ARGUMENT REQUESTED**

Moreover, Lawrence has thrust herself into the forefront of this particular public controversy in order to influence its resolution.  Before ESPN publicly released any statement on the matter, Lawrence gave an interview to the *Boston Globe* in which she lodged a range of spurious allegations against the company and—in particular—about her relationship with Buccigross.  *See* Bertrand Decl. Ex. A.  She also provided to the *Boston Globe* a copy of her then-pending administrative complaint against ESPN.  *Id.*  She permitted the *Globe* to use her photo as the story's featured image.  *Id.*  Simply put, Lawrence placed herself at the forefront of this controversy because she wanted to shape the public's opinion on ESPN and its employees.  At the very least, Lawrence is a limited-purpose public figure with respect to her allegations against ESPN.  *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1168 (E.D.N.Y. 2003) ("[Plaintiff], through his own voluntary and repeated contact with the media, rendered himself a public figure for the purpose of commenting on his lawsuit"); *McKee v. Cosby*, 874 F.3d 54, 62 (1st Cir. 2017) ("By purposefully disclosing to the public her own rape accusation against Cosby via an interview with a reporter, McKee 'thrust' herself to the 'forefront' of this controversy, seeking to 'influence its outcome,'" and thus became "a limited-purpose public figure").  And the ESPN Statement addressed only those issues about which Lawrence thrust herself into the public spotlight.  *See* Bertrand Decl. Ex. B.

> ### ii.     The ESPN Statement was related to community well-being.

In addition to being about a public figure, the ESPN Statement addressed a matter of public concern related to "community well-being."  Conn. Gen. Stat. § 52-196a(a)(1).  Allegations of an alleged sexually hostile work environment at ESPN concern the well-being of a sizable community.  Because the statute does not define "community", we derive the meaning of

-10-

**ORAL ARGUMENT REQUESTED**

this term by looking to "the circumstances surrounding the statute's enactment, the policy that the legislature sought to implement in enacting the statute, and the statute's relationship to other legislation and common-law principles governing the same general subject matter." *Thames Talent, Ltd. v. Comm'n on Human Rights & Opportunities*, 265 Conn. 127, 136 (2003).

A community is any "society or group of people with similar rights or interests." *Community*, *Black's Law Dictionary* (10th ed. 2014). Courts recognize that "[a]ll communities . . . have an effective limit of scope," and "[w]hile this scope is familiarly based in geography, it is not required to be." *Chandok v. Klessig*, 648 F. Supp. 2d 449, 459 (N.D.N.Y. 2009) ("The scope of a community can also be defined by profession, e.g., a community comprised of plant biologists"); *see also McNally v. Yarnall*, 764 F. Supp. 838, 847 (S.D.N.Y. 1991) (a matter that does not concern the "population as a whole" can still be "of public concern," even if limited to "community of scholars with an interest in . . . such statements").

Texas's anti-SLAPP statute also defines "matters of public concern" as including "community well-being." And Texas courts regularly identify communities based on interests. *See, e.g., Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App. 2016) (applicable community comprised of "members of the public who donated money" to a particular charity, as well as the "children who were to receive the charitable funds"); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 Tex. App. LEXIS 2359, at *31 (Tex. App. Mar. 12, 2015) ("Statements about an adult losing his temper over a call in a baseball game played by young children and then approaching the teenage child who made the call and yelling at him are statements that related to" community well-being).

Courts applying anti-SLAPP statutes that do not define "matters of public concern" at all similarly understand the term as applying to "an 'issue of public interest' even if it is of interest

-11-

**ORAL ARGUMENT REQUESTED**

to only a limited portion of the public, such as the members of a particular community." *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 560 (D. Vt. 2014) (*overturned on other grounds by Felis v. Downs Rachlin Martin PLLC*, 200 Vt. 465, 490 (2015)); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) ("The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity."); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 109 (2007) (termination of football coach was a public issue under anti-SLAPP statute as it impacted "San Diego's athletic community," including "staff connected to University football team").

ESPN is committed to providing its workforce of over seven-thousand employees a safe and productive workplace, free from harassment and discrimination.  Millions of consumers turn to ESPN programming every day for news updates.  ESPN's parent company, The Walt Disney Company, is a publicly traded entity with myriad stockholders.  Lawrence's public accusations against the company of systemic misogyny, biased investigations, and ongoing harassment affect all of these employees, consumers, and shareholders.  Thus, even if Lawrence were not a public figure, the ESPN Statement is protected speech because it directly concerns the well-being of a sizable community united by common interests.  *See, e.g., Smith v. Pocono Country Place Prop. Owners Ass'n*, 686 F. Supp. 1053, 1059 (M.D. Pa. 1987) (two-thousand-and-fifty members of home-owners association comprised a community for the purposes of a SLAPP motion); *Macias v. Hartwell*, 55 Cal. App. 4th 669, 671 (1997) ("political flyer distributed to 10,000 union members prior to the election of . . . officers for the United Food and Commercial Workers, Local 1036" concerned matter of public interest); *ComputerXpress, Inc. v. Jackson*, 93 Cal.

**ORAL ARGUMENT REQUESTED**

App. 4th 993, 1007 (2001) (statements regarding management of "a publicly traded company with as many as 18,000 investors . . . concerned a public issue" for SLAPP purposes); *Gulrajaney v. Petricha*, 381 N.J. Super. 241, 259, 885 A.2d 496, 507 (Super. Ct. App. Div. 2005) (e-mail sent to 2,500 condominium owners concerned matter of public interest); *see also Bonnell v. Lorenzo*, 241 F.3d 800, 813 (6th Cir. 2001) (comments "related to sexual harassment" inherently "involve[] a matter of public import").

### iii. The ESPN Statement was related to health and safety.

Statements about sexual harassment are inherently related to health and safety.  *See, e.g., Agosto v. Correctional Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) ("Nor is there any stark distinction between health and safety issues and sexual harassment, all of which impact an employee's work environment.").  As one court applying Texas's anti-SLAPP statute recently held, although "an employee's effort to reduce individually-experienced harassment" is "in part a private matter," *statements* about that sexual harassment are "related to health and safety."  *Hammond v. Lovings*, No. 5:15-CV-00579-RP, 2016 U.S. Dist. LEXIS 187597, at *7 (W.D. Tex. May 25, 2016).  The ESPN Statement effectively countered many of Lawrence's allegations about purported sexual harassment at ESPN, and is therefore protected by Connecticut's anti-SLAPP statute.

### b. The ESPN Statement was also protected by the company's right to petition the government.

Connecticut's anti-SLAPP statute also protects parties' rights to petition the government. It shields from liability any "communication in connection with an issue under consideration or review by a[n] . . . administrative, judicial or other governmental body."  Conn. Gen. Stat. § 52-196a(a)(3).  This protection ensures litigation is not improperly used to chill legitimate

**ORAL ARGUMENT REQUESTED**

petitioning activity.  *See* Rep. Tong. Connecticut House Transcript, 6/5/2017 (Connecticut's anti-SLAPP statute meant to protect against baseless litigation "designed to chill . . . the expression of constitutional rights"); *see also Wright Dev. Grp., LLC v. Walsh*, 238 Ill. 2d 620, 631 (2010) (anti-SLAPP statute protects against lawsuits designed to "chill[] and diminish[] citizen participation in government"); *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 14 ("The anti-SLAPP statute is designed to allow a defendant to file a special motion to dismiss a lawsuit that a plaintiff brings 'with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government'"); *Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 938 n.4 (2018) ("[T]he Legislature intended the anti-SLAPP procedure to protect against 'lawsuits brought primarily to chill the valid exercise of the constitutional right of . . . petition for the redress of grievances.'").

When ESPN released its statement in December 2017, the EEOC was still reviewing Lawrence's administrative charge against the company.[12]  The EEOC is an administrative and governmental body.  *See Johnson v. Fleet,* 371 F. Supp. 2d 155, 158 (D. Conn. 2005) (characterizing the EEOC as a "federal administrative bod[y]"); *Rweyemamu v. Cote*, 520 F.3d 198, 203 (2d Cir. 2008) (EEOC is a "government agency").  Lawrence's charge was based in large part on ESPN's investigation into, and conclusions regarding, her relationship with Buccigross—the precise issue addressed by the ESPN Statement.  *See* Bertrand Decl. Ex. A.

Because an administrative and governmental body was reviewing Lawrence's sexual harassment allegations against the company when it published the ESPN Statement, the communication implicates ESPN's right to petition.  *E. R.R.. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961) (right to petition includes waging "a publicity

---

[12] The EEOC did not issue a release of its jurisdiction until January 29, 2018.  Compl. ¶ 36, Ex. B.

**ORAL ARGUMENT REQUESTED**

campaign designed to influence governmental action"); *Blanchard v. Steward Carney Hosp., Inc.*, 477 Mass. 141, 149 (2017) ("To fall under the 'in connection with' definition of petitioning under the anti-SLAPP statute, a communication must be 'made to influence, inform, or at the very least, reach governmental bodies — either directly or indirectly.'") (citation omitted).

In the absence of jurisprudence regarding Connecticut's nascent anti-SLAPP law, the Court can derive insight from jurisdictions with similar statutes. *Thames Talent, Ltd.*, 265 Conn. at 136. Other jurisdictions with anti-SLAPP laws protecting the right to petition the government regularly dismiss defamation claims based on statements made to and by the media. *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 7 ("[S]tatements made to the newspapers . . . clearly amount to petitioning activity" under the anti-SLAPP statute and were properly dismissed); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1048, 1051 (E.D. Cal. 2008) (defamation claim concerning a press release discussing Plaintiff's lawsuit was dismissed, as comments were made "in connection with the litigation between the City and Plaintiff"); *Blanchard*, 477 Mass. at 149 (statements to *Boston Globe* explaining remedial measures taken by a hospital in the wake of abuse allegations constituted conduct in connection with right to petition as the interview was published while an administrative agency investigated the hospital).

Like in these cases, Lawrence's false light allegations arise from ESPN's public statements concerning litigation before an adjudicative body. Compl. ¶¶ 270-81, 344-50. The ESPN Statement was directed to anyone—including EEOC personnel—interested in the ongoing proceedings Lawrence disclosed to the *Boston Globe*. *See Blanchard*, 477 Mass. at 151 ("Walczak's statements . . . were issued in a manner that was likely to influence or, at the very least, reach DMH. He made his statements to the Boston Globe, a newspaper 'widely circulated in Boston and throughout the Commonwealth.' Decision makers at DMH, and members of the

**ORAL ARGUMENT REQUESTED**

public . . . could reasonably have been expected to read Walczak's statements."). It was therefore protected as an exercise of ESPN's right to petition the government.

### c. The Third-Party Twitter statements are protected speech.

Lawrence's complaint offers no factual predicate for her baseless allegations regarding ESPN using bots or fake social media accounts to wage a war of public opinion regarding Lawrence's allegations in this case. *See* Mot. to Strike and Dismiss, Section IV(D). Even if Lawrence had sued the authors of these third-party tweets, the *content* of each and every tweet in the complaint is protected free speech for the same reasons as the ESPN Statement. Each of these statements is a communication (a tweet), made in a public forum (the website www.twitter.com), about a public figure (Lawrence), the well-being of a community (the employees, consumers, and shareholders of ESPN), and an issue of health and safety (sexual harassment). Compl. ¶ 276; Conn. Gen. Stat. § 52-196a.

### B. Lawrence Cannot Show Probable Cause That She Will Prevail on the Merits.

Because Lawrence's false light claim is "based on [ESPN's] exercise of its right of free speech" or "right to petition the government," Lawrence bears the burden of establishing "probable cause, considering all valid defenses, that [she] will prevail on the merits" of her claim. Conn. Gen. Stat. § 52-196a(e)(3).[13] In the civil litigation context, Connecticut law defines probable cause as "a *bona fide* belief in the existence of the facts essential under the law . . . such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *J.K. Scanlan Co. v. Constr. Grp., Inc.,* 80 Conn. App. 345, 350, 835 A.2d 79, 82 (2003) (quotations omitted). Lawrence cannot meet this burden with

---

[13] Connecticut courts also use the probable cause standard in deciding motions for prejudgment remedies. *See* Conn. Gen. Stat. § 52-278d(a).

**ORAL ARGUMENT REQUESTED**

respect to the ESPN Statement because it is substantially true and no reasonable person would find it highly offensive.  And she cannot meet this burden with respect to the third-party tweets because ESPN had no role in them and, in any event, they are textbook statements of opinion protected by the Constitution.  Lawrence's false light claim should be dismissed.

### 1.  Connecticut sets a high bar for false light claims.

To prevail on her false light claim, Lawrence must prove that: (a) ESPN placed her in a "false light" that "would be highly offensive to a reasonable person[;]" and (b) ESPN "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Lawrence] would be placed." *Jonap v. Silver*, 1 Conn. App. Ct. 550, 557 (1984). "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true . . . and (2) is such a 'major misrepresentation of [plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in [her] position.'" *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131 (1982).

If "[t]here is nothing false about th[e] statement," at issue, then there can be "no claim of false light." *Miles v. City of Hartford,* 719 F. Supp. 2d 207, 216-17 (D. Conn. 2010) ("[T]he Connecticut courts have only recognized a false light claim where the defendant has published a falsehood."); *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986) ("[T]ruth . . . is a complete defense to a false light invasion of privacy cause of action"); *Goodrich*, 188 Conn. at 131-32 (1982) (when "the published statements concerning . . . [plaintiff's] affairs [a]re true," any "claim for a false light invasion of privacy" is defeated).  "As long as the matter published is *substantially true*, [a] defendant [i]s constitutionally protected from liability for a false light

**ORAL ARGUMENT REQUESTED**

invasion of privacy[.]"  *Id.* at 113, 132 (substantially true means that "the main charge, or gist" of the allegedly defamatory statement is true) (emphasis added).

Courts apply even greater scrutiny to such claims where, as here, the defendant is a media organization.  In *Goodrich*, the Connecticut Supreme Court affirmed the trial judge's decision to grant the newspaper defendant's motion for directed verdict.  The plaintiff argued that "'there exist[ed] additional circumstances which when expanded, cast the plaintiff in a *more favorable light*" that was "more in keeping with reality.'"  188 Conn. at 132.  Rejecting this contention, the Connecticut Supreme Court stressed that "[t]o allow recovery upon such a claim would violate the defendant's first amendment rights, since '[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials — whether fair or unfair — constitute the exercise of editorial control and judgment.'"  *Id.* (Citation omitted.)  The court held:

> Under the first amendment, a media defendant can be liable for a false
>
> light invasion of privacy only where it publishes highly offensive
>
> material without regard to its falsity, and to the false impression
>
> relayed to the public. As long as the matter published is substantially
>
> true, the defendant was constitutionally protected from liability for a
>
> false light invasion of privacy, regardless of its decision to omit facts
>
> that may place the plaintiff under less harsh public scrutiny.

*Id.* (Internal citation omitted.)[14]

---

[14] *See also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials — whether fair or unfair — constitute the exercise of editorial control and judgment.  It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.").

**ORAL ARGUMENT REQUESTED**

Further, "[u]nder any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy." Restatement (Second) of Torts § 652G (Am. Law Inst. 1977); *see also Dellacamera v. New Haven Register*, No. CV000436560, 2002 Conn. Super. LEXIS 3403, at *13 (Conn. Super. Ct. Oct. 28, 2002) (citing Restatement (Second) of Torts § 652G) ("[P]rivileges applicable to defamation claim, such as fair report privilege, also apply to false light claim.").  Under the "fair comment" privilege, "pure expressions of opinion . . . are unqualifiedly protected by the first amendment." *Goodrich*, 188 Conn. at 124.[15]  This protection ensures "[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977); *see also Berry v. Ronald*, No. FBTCV175032673, 2018 Conn. Super. LEXIS 324, at *9 (Conn. Super. Ct. Feb. 20, 2018) ("[A]s the essence of a claim for invasion of privacy by way of false light depends upon the falsity of the statement, a clear expression of an opinion which is neither objectively true or untrue—is insufficient to support such a cause of action.").

Lawrence's false light claim is based on two allegations: (1) that ESPN fraudulently created, redacted, and rearranged the text messages she exchanged with Buccigross to make it appear as though Lawrence pursued and hounded him; and (2) that ESPN used bots and fake social media accounts to promote the text messages, attack Lawrence, encourage Lawrence's critics, condemn her supporters, and to manufacture support for Buccigross.  Compl. ¶¶ 270-76.

Lawrence cannot meet her burden with respect to *any element* of her claim.  She cannot establish probable cause that her false light claim would prevail based on the ESPN Statement

---

[15] The *Goodrich* court recognized that "[t]he constitution does not protect opinions . . . which invade the legitimate expectations of privacy of the person about whom the opinion was stated." *Goodrich*, 188 Conn. at 118 n.9.  But "an opinion *is* . . . *protected*[] when speech involves a matter of public concern." *Netscout Sys. v. Gartner, Inc.*, No. FSTCV146022988S, 2015 Conn. Super. LEXIS 3147, at *21 (Conn. Super. Ct. Dec. 15, 2015) (emphasis added).

**ORAL ARGUMENT REQUESTED**

because ESPN did not fabricate or rearrange the text messages, the statement was substantially true, and it reflected ESPN's constitutionally-protected editorial control and judgment. Lawrence cannot establish probable cause that her false light claim would prevail based on the third-party tweets because ESPN had no role in those tweets and—in any event—they are on their face constitutionally protected expressions of opinion.  Lawrence's false light claim should be dismissed pursuant to state law.

### 2. Lawrence cannot show the ESPN Statement was an actionable false light invasion of privacy.

#### a. ESPN did not fabricate, rearrange, or create the text messages.

Lawrence's ninth cause of action begins by alleging ESPN "fraudulently redact[ed] and rearrang[ed] the text messages she exchanged with Buccigross to make it appear as though Ms. Lawrence pursued and hounded him."  Compl. ¶ 272.  It then asserts that ESPN published "*fraudulent* text messages [that] ESPN *created*."  Compl. ¶ 273 (emphasis added).  The next day, Lawrence claims, the *Boston Globe* and other media published the "true texts."  Compl. ¶ 278.

A simple comparison of the texts published in the ESPN Statement and those published by the *Boston Globe* belies Lawrence's claim that ESPN created fraudulent text messages.  *See* Bertrand Decl. Ex. D.  As Exhibit D proves, *every single message* published as part of the ESPN Statement appears within the broader version released by the *Boston Globe*.  *Id.*  It also shows that ESPN did not rearrange the text message excerpts, it released the excerpted text messages in the exact order that they appear in the *Boston Globe* publication.  *Id.*  And only the *Boston Globe* version contained redactions.  *Id.* at 9, 14.

Nowhere in the ESPN Statement did the company suggest that it was producing every single text message ever exchanged between Lawrence and Buccigross.  To the contrary, the

**ORAL ARGUMENT REQUESTED**

ESPN Statement explicitly stated that the text messages published by the company were only "*portions* of text messages exchanged between" them, sufficient to show that they had a "consensual, personal friendship that spanned months." Bertrand Decl. Ex. B.[16]

**b.    The ESPN Statement did not place Lawrence in a false light because it was true.**

Lawrence cannot show that any portion of the ESPN Statement is false. Based on her admission that the *Boston Globe* published the "true texts,"[17] Exhibit D reveals that Lawrence sent or received every single text message that ESPN produced, and that ESPN *did not rearrange any of the messages*. To be sure, ESPN did not publish every text message the two ever exchanged. For example, it did not release several of the messages reflecting Lawrence reaching out to Buccigross to make social plans or keep tabs on him. Bertrand Decl. Ex. D. at 5 ("How's it going Ace? I have us set for A'vert Brasserie . . . at 8:30pm."), 13 ("Were you at the Hartford golf club today?"), 16 ("Hey! Still dominating on the green?"), 21 ("Lemme know anytime you're concert going and want a companion! Love all types of music."), and 22 ("Fan of white water rafting?"). And it did not publish the photograph of herself that Lawrence sent to Buccigross unsolicited on August 28, 2016. *Id.* at 30.

Instead, consistent with its constitutional rights, and as the company stressed in the ESPN Statement, it released only "portions of [the] text messages" they exchanged, sufficient to show their "consensual, personal friendship that spanned months." Bertrand Decl. Ex. B. At worst, the ESPN Statement placed Lawrence in the light of someone who had a consensual, personal friendship with Buccigross that spanned several months. Lawrence's own words confirm this,

---

[16] Nowhere in the ESPN Statement or otherwise did the company assert that Lawrence "pursued and hounded" Buccigross—that is Lawrence's interpretation alone. Compl. ¶ 272.
[17] Compl. ¶ 278.

**ORAL ARGUMENT REQUESTED**

and she cannot establish probable cause that it is false.  To the contrary, as Lawrence admits by

acknowledging the accuracy of the texts published by the *Boston Globe*, the ESPN Statement

was true.  Compl. ¶ 278.  To the extent Lawrence's false light claim arises from the ESPN

Statement, it should be dismissed.  *Goodrich*, 188 Conn. at 132 ("As long as the matter published

is substantially true, the defendant was constitutionally protected from liability for a false light

invasion of privacy, regardless of its decision to omit facts that may place the plaintiff under less

harsh public scrutiny"); *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986) ("[R]ecovery for a

false light tort may not be predicated on a rule that holds a media defendant liable for

broadcasting truthful statements and actions because it failed to include additional facts which

might have cast the plaintiff in a more favorable or balanced light"); *Gleason v. Smolinski*, No.

NNHCV065005107S, 2009 Conn. Super. LEXIS 1982, at *18-19 (Conn. Super. Ct. July 20,

2009) (dismissing false light claims stemming from publication of details regarding the

plaintiff's prior relationship because, despite "additional circumstances which when expanded,

cast [Gleason] in a *more favorable light*," the matter published was "substantially true").

**c.     The ESPN Statement is not highly offensive to a reasonable
person.**

A reasonable person would understand the ESPN Statement for what it is: a media

company reporting on salacious, public allegations against it by producing "portions of text

messages" that refute those allegations.  Bertrand Decl. Ex. B.  Lawrence's characterization of

the ESPN Statement—that she was pursuing and hounding Buccigross—is unreasonable and

therefore irrelevant.[18]  Compl. ¶ 272.  ESPN's intent was clear on the face of its statement:

provide factual support for its opinion that Lawrence and Buccigross "had a consensual, personal

---

[18] If Lawrence's understanding were reasonable, it would still not be highly offensive because it is—by Lawrence's
own admission—based on her own words.

-22-

**ORAL ARGUMENT REQUESTED**

friendship that spanned months."  Bertrand Decl. Ex. B.  That is what the text message excerpts, *and* the full set of text messages, each reveal in Lawrence and Buccigross's own words. Bertrand Decl. Exs. B; D.  They texted about music and sports, gossiped, joked, and got together outside of work.  *Id.*

The omission of extraneous text messages and photographs exchanged between the parties would similarly not offend a reasonable person.  ESPN stated unequivocally that the texts it was publishing were only excerpts.  Bertrand Decl. Ex. B.  When SportsCenter presents highlights from basketball games across the country, no reasonable person is offended by the omitted footage or believes that the entire game lasted 30 seconds and consisted solely of exceptional plays.  Reasonable people understand the difference between a highlight and a game, just as they understand the difference between "portions of text messages" and every text message ever exchanged between two people.  *Id.*  If Lawrence was concerned that the unpublished texts were important to her story, she was free to release the remainder for publication—which is exactly what she did.  Compl. ¶ 278.  Her dismay at the fact that public opinion remained the same after the publication of the full set of texts is not actionable.  *Id.* ¶¶ 278; 281.  To the contrary, it reflects that the excerpted text messages *and* the full text messages reveal to reasonable people the *same* consensual, personal, months-long friendship between Lawrence and Buccigross.

### d.    ESPN could not have acted with malice because nothing in the ESPN Statement was false.

As discussed above, no portion of the ESPN Statement, including the excerpts of text messages, were false.  *Supra* § V(B)(2)(a)-(b).  Not only does this defeat Lawrence's false light claim at its origin (*see id.*), it renders impossible her claim that ESPN had knowledge of, or acted

**ORAL ARGUMENT REQUESTED**

in reckless disregard as to, the alleged falsity of the ESPN Statement.  *Air Wis. Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 861 (2014) ("[A]ctual malice entails falsity"); *Goodrich*, 188 Conn. at 131 (false light's actual malice standard requires proving the "actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter"); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 243 n.5 (2d Cir. 2017) ("[P]roof of a statement's truth . . . show[s] that malice was lacking.").

### 3. Lawrence cannot show that the third-party tweets were an actionable false light invasion of privacy.

#### a. There is no basis for Lawrence's claim that ESPN used bots or fake social media accounts to publish the third-party tweets.

Lawrence's complaint alleges, with no factual predicate, the facially implausible claim that ESPN not only uses bots and fake social media accounts to promote its programming, but also used them to attack and incite hatred toward Lawrence herself.  Compl. ¶¶ 275–277.  Because Lawrence has no basis whatsoever for making this allegation—which in any event cannot survive ESPN's Special Motion to Dismiss—she cannot plead it with particularity or establish probable cause that it is true.  To the extent her false light claim is based on this spurious allegation, it should be dismissed.

#### b. The third-party tweets are not actionable.

Even if Lawrence sued the authors of the third-party tweets, her claim would fail because each and every tweet cited in the complaint is an opinion protected by the Constitution.  *See, e.g.,* Compl. ¶ 276 (@TomJohnson69420 tweets: "you are minimizing sexual assault.  I'm offended"; @Black_4Trump tweets: "You are a disgrace to us black people.  The released texts show you were the aggressive one"; @SuperRG1 tweets: "Well…..this could mark the beginning of the backlash against the #MeToo[] movement……sad to see stuff like this.  People that have been

**ORAL ARGUMENT REQUESTED**

wronged will now be looked with skepticism"; @sherms89 tweets: "if those text messages are the extent of the 'sexual harassment' that you are claiming, then you should be ashamed of yourself. Seems like flirting to me and seems like you were engaged as well"; @LogicSome tweets: "Seriously? I saw the texts released by ESPN. Looks @AdrienneLaw was trying to use her stunning beauty to entice a guy into helping her get promoted. Disgraceful. You cheapen the real victims out there!").

These tweets are quintessential opinions protected by the fair comment privilege, which protects opinions regarding public matters that are based on "known or disclosed facts." *Goodrich*, 188 Conn. at 118. As discussed above, Lawrence voluntarily thrust herself, and her relationship with John Buccigross, into the center of public controversy. *Supra* § V(A)(1)(a)(2)(i). The tweets reveal that the released text messages and Lawrence's allegations form the factual basis of each opinion expressed. *Dow v. New Haven Indep., Inc.*, 41 Conn. Supp. Ct. 31, 38 (1987) (when "the defendant states the fact upon which he or she bases the opinion" their "statements clearly fall within the protection of the first amendment"); *Colon v. Town of W. Hartford*, No. 3:00CV168(AHN), 2001 U.S. Dist. LEXIS 484, at *16 (D. Conn. Jan. 5, 2001) (opinion was privileged as author "disclose[d] the factual basis for her opinion" was a complaint filed with the CHRO).

Connecticut law requires Lawrence to establish, first and foremost, that the tweets at issue are "not true." *Goodrich,* 188 Conn. at 132 (quoting 3 Restatement (Second) of Torts § 652E); *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 216–17 (D. Conn. 2010), *aff'd*, 445 F. App'x 379 (2d Cir. 2011) (a false light "claim can be based only on the publication of material that is false"). But each tweet identified in the complaint is "a clear expression of an opinion which is neither objectively true or untrue" and is therefore "insufficient to support" a false light

**ORAL ARGUMENT REQUESTED**

cause of action.  *Berry v. Ronald*, No. FBTCV175032673, 2018 Conn. Super. LEXIS 324, at *9

(Conn. Super. Ct. Feb. 20, 2018).  The statements assert subjective beliefs about Lawrence: that

she "minimizes sexual assault;" "disgraces black people;" "seem[ed] like [she was] flirting;" and

"cheapen[s] real victims."  Compl. ¶ 276.  A subjective statement that "cannot be proved false"

is an opinion.  *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977); *Mr. Chow of N.Y.*

*v. Ste. Jour Azur S.A.*, 759 F.2d 219, 229 (2d Cir. 1985) (restaurant review concerning the proper

"temperature of vegetables, the thickness of pancakes, the amount of dough in sweet and sour

pork and the quality of service" are "clearly a matter of personal taste" and cannot be "proved

false"); *Berry*, 2018 Conn. Super. LEXIS 324, at *8 (comment that plaintiff "was 'scaring'"

defendant is non-actionable opinion as it did not "communicate anything other than a subjective

feeling").  Because the fair comment privilege shields each and every one of these comments,

Lawrence cannot use them to sustain a false light cause of action.

## VI.   **CONCLUSION**

Because (1) Lawrence's ninth cause of action is based on ESPN's exercise of its

constitutionally protected rights; and (2) no reasonable person could ever have a bona-fide belief

that the facts essential to Lawrence's false light cause of action exist, the Court should dismiss

Lawrence's ninth cause of action and award ESPN its costs and attorneys' fees.

**ORAL ARGUMENT REQUESTED**

Dated: April 11, 2018                    Respectfully submitted,


By:     /s/ Raymond W. Bertrand
        Raymond W. Bertrand (CT 421237)
        PAUL HASTINGS LLP
        4747 Executive Drive
        12th Floor
        San Diego, California  92121
        Telephone:  1(858) 458-3000
        Facsimile:  1(858) 458-3005
        Email:  raymondbertrand@paulhastings.com

        Patrick W. Shea (CT403851)
        PAUL HASTINGS LLP
        200 Park Avenue
        New York, New York 10166
        Telephone:  1(212) 318-6000
        Facsimile:  1(212) 319-4090
        Email:  patrickshea@paulhastings.com

        Counsel for Defendants
        ESPN, Inc., Margaret Green, Donna Hricisko,
        Robert Gallo, and John Obringer

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2018, a copy of foregoing **MEMORANDUM OF LAW IN SUPPORT OF ESPN, INC.'S SPECIAL MOTION TO DISMISS NINTH CAUSE OF ACTION IN PLAINTIFF'S COMPLAINT PURSUANT TO CONN. GEN. STAT. § 52-196a** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Raymond W. Bertrand
Raymond W. Bertrand (CT421237)
PAUL HASTINGS LLP
4747 Executive Drive
San Diego, CA 92121-3205
Telephone:  (858) 458-3000
Facsimile:  (858) 458-3005
Email:  raymondbertrand@paulhastings.com

**ORAL ARGUMENT REQUESTED**