UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADRIENNE J. LAWRENCE,<br><br>            Plaintiff,<br><br>    v.<br><br>ESPN, INC., MARGARET GREEN, in her individual and professional capacities, DONNA HRICISKO, in her individual and professional capacities, ROBERT GALLO, in his individual and professional capacities, and JOHN OBRINGER, in his individual and professional capacities,<br><br>            Defendants. | CIVIL ACTION NO.<br>3:18-CV-00383-SRU<br><br><br><br>Date:    June 15, 2018 |

**ESPN, INC.'S REPLY IN SUPPORT OF SPECIAL MOTION
TO DISMISS NINTH CAUSE OF ACTION IN PLAINTIFF'S
<u>COMPLAINT PURSUANT TO CONN. GEN. STAT. § 52-196a</u>**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................... 1

II. *ERIE* AND ITS SECOND CIRCUIT PROGENY COMPEL THE APPLICATION OF CONNECTICUT'S ANTI-SLAPP STATUTE. ................................ 1

    A. The anti-SLAPP law is substantive ............................................................ 1

    B. The anti-SLAPP law does not squarely conflict with the Federal Rules. .............. 3

III. LAWRENCE'S FALSE LIGHT ACTION IS A TEXTBOOK SLAPP CLAIM ............. 6

    A. The ESPN Statement is protected free speech. ........................................... 6

    B. The ESPN Statement is protected by the company's petitioning rights. ............... 8

    C. Lawrence failed to show probable cause that she will prevail on the merits. ......... 8

    D. Lawrence concedes the third-party tweets are not actionable. ............................ 10

IV. CONCLUSION ........................................................................................................ 10

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) .................................................................................. *passim*

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) .............................. 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 4

*Burlington N. R.R. Co. v. Woods*,
   480 U.S. 1 (1987) ............................................................................................................ 3

*Competitive Enter. Inst. v. Mann*,
   150 A.3d 1213 (D.C. 2016) ............................................................................................. 6

*Contemporary Mission, Inc. v. N. Y. Times Co.*,
   842 F.2d 612 (2d Cir. 1988) ............................................................................................ 7

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ........................................................................................................ 7

*Godin v. Schencks*,
   629 F.3d 79 (1st Cir. 2010) ..................................................................................... 3, 4, 5

*Hanna v. Plumer*,
   380 U.S. 460 (1965) ........................................................................................................ 2

*Intercon Sols., Inc. v. Basel Action Network*,
   791 F.3d 729 (7th Cir. 2015) .......................................................................................... 6

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013) ............................................................................................ 1

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
   885 F.3d 659 (10th Cir. 2018) ........................................................................................ 6

*Makaeff v. Trump Univ., LLC*,
   736 F.3d 1180 (9th Cir. 2013) ................................................................................ 2, 3, 5

*McKee v. Cosby*,
   874 F.3d 54 (1st Cir. 2017), *petition for cert. filed*,
   No. 17-1542 (Apr. 19, 2018) ........................................................................................... 7

ORAL ARGUMENT REQUESTED

# TABLE OF AUTHORITIES
(continued)

Page(s)

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ................................................................................................3

*Packingham v. N. Carolina*,
   137 S. Ct. 1730 (2017) ..........................................................................................................8

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
   464 F. Supp. 2d 206 (S.D.N.Y. 2006) ...................................................................................2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ....................................................................................................3, 4, 5

**Statutes**

28 U.S.C. § 2072 ............................................................................................................................4

Cal. Civ. Proc. Code § 430.10 .......................................................................................................5

Conn. Gen. Stat.
   § 52-196a .........................................................................................................................6, 7
   § 52-196a(a)(3) ....................................................................................................................8
   § 52-196a(e)(3) ................................................................................................................4, 5

**Other Authorities**

Fed. R. Civ. Proc.
   R. 8 ...................................................................................................................................3, 4
   R. 12 ..............................................................................................................................3, 4, 5
   R. 12(b)(6) ........................................................................................................................4, 5
   R. 23 .....................................................................................................................................3
   R. 56 ............................................................................................................................3, 4, 5

1 Moore's Federal Practice - Civil § 1.05 .....................................................................................6

**ORAL ARGUMENT REQUESTED**

I.      **INTRODUCTION**

In her opposition, Lawrence asks the Court to ignore Second Circuit precedent and cast aside "without further inquiry" Connecticut's anti-SLAPP statute. In support, she targets ancillary procedures under the statute that ESPN does not seek to apply and conjures conflicts where none exist. Lawrence next argues in favor of ignoring Supreme Court precedent to hold the open internet is not a public forum, attempts to sweep under the rug admissions fatal to her claims, and tries to rewrite the facts and law to render her false light claim actionable. It is not.

II.     **_ERIE_ AND ITS SECOND CIRCUIT PROGENY COMPEL THE APPLICATION OF CONNECTICUT'S ANTI-SLAPP STATUTE.**

This Court must apply the relevant provisions of Connecticut's anti-SLAPP law if they "(1) would apply in state court had suit been filed there; (2) [are] substantive within the meaning of *Erie*, since [they are] consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity; and (3) [do] not squarely conflict with a valid federal rule."[1] Lawrence does not contest that the anti-SLAPP law would apply in a Connecticut state court had she opted to file there, so only the second and third prongs are at issue.

      A.      **The anti-SLAPP law is substantive.**

Lawrence first argues that the anti-SLAPP law is procedural because of how it is labeled. Pl. Br. 7.[2] But the statute's label is irrelevant to the *Erie* analysis. *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) ("[The *Erie*] test looks not to the *labels* but to the *content* . . . it is 'immaterial' whether" the state rule "is labelled by *state law* as 'procedural,' 'substantive,' both, or neither."). Lawrence next argues that the anti-SLAPP law is procedural in "substance." Pl. Br. 7. She is mistaken. A statute is substantive within the meaning of Erie

---

[1] *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (citations omitted).
[2] Throughout this brief, Plaintiff's opposition memorandum (ECF 18) is cited as "Pl. Br. [page number]."

**ORAL ARGUMENT REQUESTED**

when "it is consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity." *Adelson*, 774 F.3d at 809. In *Adelson*, the Second Circuit held that provisions of Nevada's anti-SLAPP law protecting defendants "from civil liability" and imposing "mandatory fee shifting" were substantive under *Erie*. *Id.* It is obvious that no plaintiff would opt to pursue in state court a cause of action which would be dismissed at the outset with an award of attorneys' fees, but which a federal court would allow to proceed.[3]

The provisions of Connecticut's anti-SLAPP statute at issue here—fee shifting and a heightened substantive legal standard—are analogous to the portions of the Nevada law that the Second Circuit held "unproblematic" in *Adelson*. 774 F.3d at 809. Lawrence points to *other* portions of the statute—providing for time limits, the potential stay of discovery, and the non-admissibility of the court's findings—as rendering it procedural. Pl. Br. 7-8. But these extraneous provisions are of no import here: ESPN filed its motion within the timeframe applicable under the Federal Rules, did not seek a stay of discovery, and seeks no evidentiary limitation with respect to the court's determination.[4]

---

[3] *See Hanna v. Plumer*, 380 U.S. 460, 468 n.9 (1965) (focusing the inquiry on "whether . . . failure to enforce [the state law] would be likely to cause a plaintiff to choose the federal court."); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th Cir. 2013) (anti-SLAPP laws reflect decisions by the state to "impose substantive limitations on certain state law actions . . . Refusing to recognize these limitations in federal court" would put "the federal courts at risk of being swept away in a rising tide of frivolous state actions" because "SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of suppressing a SLAPP defendant's speech-related activities."); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006) ("[A]ttorneys' fees are considered substantive under the *Erie* doctrine.").

[4] *See Adelson v. Harris*, 973 F. Supp. 2d 467, 493 n.21 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ("even if the procedural elements of certain Anti–SLAPP statutes present problems under *Erie* . . . those problems are not presented . . . where the effects of the Anti–SLAPP law (fee-shifting and a heightened substantive legal standard) are substantive"). ESPN executed a waiver of service in this matter, extending to 60 days the timeframe to respond to the Complaint. ECF 11.

**ORAL ARGUMENT REQUESTED**

### B. The anti-SLAPP law does not squarely conflict with the Federal Rules.

Connecticut's substantive anti-SLAPP provisions govern unless they "squarely conflict with a valid federal rule." *Adelson*, 774 F.3d at 809.  Lawrence asks this Court to depart from Second Circuit authority to hold that the state law "directly collides" with Federal Rules 8, 12, and 56.  Pl. Br. 10.  She offers no persuasive reason for doing so.

The "initial step" in this analysis "is to determine whether, when fairly construed" the Federal Rules at issue are "sufficiently broad to cause a direct collision with the state law" or control the issue so completely that they leave "no room for the operation of that law." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (quotation marks omitted).  Federal Rules 12 and 56 "are general federal procedures governing all categories of cases." *Godin v. Schencks*, 629 F.3d 79, 88 (1st Cir. 2010).  Neither rule provides "that a plaintiff is entitled to maintain his suit if their requirements are met; instead, they provide various theories upon which a suit may be disposed of before trial." *Makaeff* , 736 F.3d at 1182.  And "there is no indication that Rule . . . 12 and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (citations omitted).

Connecticut's anti-SLAPP statute, like California's, creates "a separate and additional theory upon which certain kinds of suits may be disposed of before trial" and thus "supplements rather than conflicts with the Federal Rules." *Makaeff*, 736 F.3d at 1182; *See also Godin*, 629 F.3d at 88.  Unlike the statute at issue in *Shady Grove*—which collided directly with Rule 23 by prohibiting a class action where Rule 23 mandated its availability—the Connecticut law's provision of an additional basis to dismiss a baseless claim does not conflict with any Federal

**ORAL ARGUMENT REQUESTED**

Rule mandating that such a claim be allowed to proceed.[5] The statute "does not seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function." *Godin,* 629 F.3d at 88. Indeed, Defendants have separately moved to dismiss a portion of the complaint for different reasons pursuant to Federal Rule 12(b)(6). ECF 15. The Connecticut law also passes Justice Stevens' test in *Shady Grove*: permitting the Rules Enabling Act to displace it would "modify [a] substantive [state] right" because the anti-SLAPP statute makes it "significantly more difficult to bring or prove a claim, thus serving to limit the scope of that claim."[6]

Rule 12(b)(6) establishes a mechanism to test the sufficiency of a complaint.[7] Connecticut's anti-SLAPP statute, "by contrast, provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's" constitutionally protected activity and "the plaintiff cannot meet the special rules [the state] has created to protect [that activity] against lawsuits." *Godin*, 629 F.3d at 89 (applying Maine's anti-SLAPP statute). It does not establish a separate *pleading* standard, because it does not limit a plaintiff to relying on her complaint allegations in showing "probable cause" that she will "prevail on the merits." Conn. Gen. Stat. § 52-196a(e)(3). Indeed, Lawrence has attached to her opposition no fewer than 13 extra-complaint exhibits. ECF 18.

Rule 56 provides a procedure by which parties may obtain judgment in their favor "before trial on the basis that there are no disputed issues of material fact and, as a matter of law, one party is entitled to judgment." *Godin*, 629 F.3d at 89. Connecticut's anti-SLAPP statute, like Maine's, serves an "entirely distinct function of protecting those specific defendants that

---

[5] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010).
[6] *Shady Grove*, 559 U.S. at 418, 420 (citing 28 U.S.C. § 2072).
[7] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Federal Rule 8 is a counterpart to Rule 12, and establishes the basic pleading requirements against which the sufficiency of the complaint may be tested under Rule 12. Fed. R. Civ. P. 8; 12. Thus, for the same reason the applicable provisions of Connecticut's anti-SLAPP law do not conflict with Rule 12—namely, because they do not establish a *pleading* standard—they do not conflict with Rule 8. *Id.*

ORAL ARGUMENT REQUESTED

have been targeted with litigation on the basis of their protected speech." *Id.* Unlike Rule 56, the statute narrowly requires a court to consider whether a defendant's conduct fits within certain protected categories and, if so, whether the plaintiff can make an initial showing of "probable cause" that she will "prevail on the merits." Conn. Gen. Stat. § 52-196a(e)(3). Lawrence argues the state law directly collides with Rule 56 because it provides for a stay of discovery, but Lawrence has not sought discovery, this Court has not ordered a stay, and ESPN does not seek one.

Thus, the "plain meaning" of these Federal Rules does "not come into 'direct collision' with the state law, and both can operate."[8] To be sure, Connecticut law does contain provisions that directly collide with Federal Rules 12(b)(6) and 56. *See* Conn. Practice Book § 10-39 (legal sufficiency of a complaint); § 17-44 (summary judgment). That fact only "further supports the view" that in passing its anti-SLAPP statute, Connecticut "has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional" activities. *Godin*, 629 F.3d at 88.[9]

That is why when the Second Circuit decided this issue "as a threshold matter" in *Adelson*, it held that the anti-SLAPP provision protecting defendants from costly litigation based on their exercise of constitutionally protected rights, and the provision awarding attorneys' fees to those defendants to further insulate them from unwarranted expense, each "(1) would apply in state court had suit been filed there; (2) is substantive within the meaning of *Erie*, since it is consequential enough that enforcement in federal proceedings will serve to discourage forum

---

[8] *Shady Grove*, 559 U.S. at 421 (citations omitted).
[9] *See Makaeff*, 736 F.3d at 1182 (Rule 12 asks "whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted. California's anti-SLAPP statute does not attempt to answer this question; instead, California Code of Civil Procedure § 430.10, the state statutory analog of Rule 12, does").

**ORAL ARGUMENT REQUESTED**

shopping and avoid inequity; and (3) does not squarely conflict with a valid federal rule." *Adelson*, 774 F.3d at 809.  While failing to disclose or discuss this binding precedent, Lawrence brands as "foolish" circuits that rule consistent with it, and invites this Court to follow instead the minority rule adopted by some others.[10]  Pl. Br. 11, 15.  Her invitation should be rejected.[11]

## III. LAWRENCE'S FALSE LIGHT ACTION IS A TEXTBOOK SLAPP CLAIM.

### A. The ESPN Statement is protected free speech.

Lawrence's argument that the ESPN Statement is not protected free speech misreads the statute and fails to address in any form one of the statutory reasons the statement is protected. Under Connecticut's anti-SLAPP law, a "matter of public concern means an issue related to . . . health or safety  . . . community well-being . . . or [a] public figure."  Conn. Gen. Stat. 52-196a. While Lawrence erroneously contends that she is not a public figure, and that the ESPN Statement does not relate broadly to a matter of public concern or specifically to public health or safety, she never disputes that ESPN's statement concerned a matter of "community well-being." Pl. Br. 17-21.  She thus implicitly concedes this important point.

Lawrence likewise fails to engage with the binding precedent establishing that her own characterizations of herself render her a public figure. *See* ECF 14-1, at 9.  Instead, she argues she is not a public figure because—contrary to the allegations in her sworn complaint—she was

---

[10] *See* 1 Moore's Federal Practice - Civil § 1.05 ("in federal court . . . the majority rule and the better rule is that any early disposition of the state claims is governed by an applicable anti-SLAPP statute.") (collecting cases).
[11] Although irrelevant in the face of binding Second Circuit authority, the cases on which Lawrence relies cannot lift the load she asks of them.  *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659,  670 (10th Cir. 2018) (Nevada anti-SLAPP statute procedural because—unlike the Connecticut statute—it did not "shift substantive burdens of proof" and thus could never bear on "the suit's merits determination"); *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1238 n.32 (D.C. 2016) (confirming the D.C. Circuit authority on which Lawrence relies was merely "the dicta in *Abbas*"); *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 732 (7th Cir. 2015) (declining to apply Washington's anti-SLAPP statute because that state's supreme court held that the statute violated the state constitution).

-6-

ORAL ARGUMENT REQUESTED

less experienced than her co-workers and was never ESPN's primary legal analyst.[12]  Pl. 17-18.
She then claims she is not even a limited purpose public figure because others were discussed in
greater detail than her in the *Boston Globe* article.[13]  Pl. Br. 19-20.  But the test for a public
figure is not zero-sum—a person who, like Lawrence, "voluntarily injects [her]self or is drawn
into a particular public controversy . . . thereby becomes a public figure for a limited range of
issues."[14]  Lawrence cites to Second Circuit case law applying a four-part test but fails to
describe it, presumably because it is lockstep with the facts here: by providing quotes,
documents, and information to the *Boston Globe* about her spurious sexual harassment allegation
against Buccigross, Lawrence "(1) successfully invited public attention to [her] views in an effort
to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected
[her]self into a public controversy related to the subject of the litigation; [and] (3) assumed a
position of prominence in the public controversy."[15]  And the fact that Lawrence "(4) maintained
regular and continuing access to the media" is evident from the articles relaying her response to
the ESPN Statement on *the same day it was published*.[16]

Next, Lawrence advances a "public concern" argument wholly divorced from the
statutory definition at issue, which thus requires no response.  Pl. Br. 20-21.  She then argues the

---

[12] *See, e.g.*, Compl. ¶228 (Lawrence "had become ESPN's primary legal analyst"); ¶¶ 259-60 (ESPN chose "less qualified" personalities than her); ECF 18-02 ¶ 8 ("distinguished myself as an anchor" and had "routine anchoring duties"; wrote articles leading to appearances as an "on-air legal analyst across ESPN's many shows"); ¶ 33 (became the "main anchor for the 1-4 p.m. *SportsCenter* Updates shift on ESPNNEWS").
[13] Lawrence also responds to an argument Defendants did not make by asserting that she did not become a limited purpose public figure by filing a discrimination charge with the CHRO.  Pl. Br. 18.
[14] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).
[15] *Contemporary Mission, Inc. v. N. Y. Times Co.*, 842 F.2d 612, 617 (2d Cir. 1988); *See McKee v. Cosby*, 874 F.3d 54, 62 (1st Cir. 2017) ("By purposefully disclosing to the public her own rape accusation against Cosby via an interview with a reporter, McKee 'thrust' herself to the 'forefront' of this controversy, seeking to 'influence its outcome,'" and thus became "a limited-purpose public figure") (citations omitted), *petition for cert. filed*, No. 17-1542 (Apr. 19, 2018).  Notably, despite being authorized by Connecticut's anti-SLAPP law to do so, Lawrence has not submitted any evidence to suggest that she did not provide to the *Boston Globe* her CHRO charge, the text messages, and permission to use her photo.  Conn. Gen. Stat. 52-196a.
[16] *Id.; See* ECF 14-5, at 3; concurrently filed Declaration of Raymond W. Bertrand, Exhibit A (examples of articles publishing Lawrence's same-day response to the ESPN Statement); Exhibit B (examples of articles publishing Lawrence's response to Jemele Hill's statement that Lawrence's allegations about her were false).

**ORAL ARGUMENT REQUESTED**

ESPN Statement did not relate to health and safety because it "only concerned" her "personal experiences." Pl. Br. 21. But the ESPN Statement was not made in a vacuum; it responded directly to Lawrence's broadly published assertion that the company's determination with respect to her Buccigross complaint showed "ESPN has failed to address its deeply ingrained culture of sexism and hostile treatment of women." Pl. Br. 18 (citations omitted).

Finally, Lawrence asks the Court to reject Supreme Court precedent to hold that the open internet is not a public forum. Pl. Br. 17.[17] She offers no authority for her position, and fails to address any of the contrary cases ESPN cited in its opening brief. *See* ECF 14-1, at 8.

### B. The ESPN Statement is protected by the company's petitioning rights.

Lawrence's argument that the ESPN Statement was not protected under the statute's "right to petition the government" prong fails as well. She admits that EEOC did not make a final determination until January 29, 2018. Pl. Br. 23. She further admits that CHRO did not resolve the charge until December 5, 2017, and that for 15 days thereafter—including when the company published the ESPN Statement—the disposition remained reviewable by EEOC. *Id.* at 22-23. For both reasons, Lawrence's charge was pending at the time of the ESPN Statement, which thus fits the statutory definition of the "right to petition the government." Conn. Gen. Stat. 52-196a(a)(3).

### C. Lawrence failed to show probable cause that she will prevail on the merits.

The ESPN Statement expressed the company's opinion that "the attached portions of text messages" make "clear that they had a consensual, personal friendship that spanned months." ECF 14-4. Unable to show probable cause that she will prevail on the merits with respect to *that* accurate statement, Lawrence opts to construct a straw man by claiming ESPN's "scripted

---

[17] *Packingham v. N. Carolina*, 137 S. Ct. 1730, 1735 (2017) ("in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general").

**ORAL ARGUMENT REQUESTED**

conclusion" was that Lawrence "pursued and hounded Buccigross and welcomed his inappropriate text messages." Pl. Br. 25-26.  But the ESPN Statement speaks for itself.

Lawrence's claim that the texts appeared to be a single continuous thread ignores the company's express description of them as "*portions* of text messages." ECF 14-4.  She also disregards this disclaimer to argue ESPN made "extensive efforts" to trick readers into believing that the text messages were a complete set by including a hyperlink within the narrative text of the statement and below it.  And Lawrence's stubborn assertion that ESPN "rearranged the messages" is debunked by the comparison in the record, which establishes she sent or received every single text that ESPN published and none were out of order.[18]  ECF 14-6.  As ESPN *expressly informed readers*, it did not produce every text message that the two exchanged.  Just as it omitted the shirtless photograph that Buccigross sent to Lawrence in early August, it did not include the unsolicited photograph of Lawrence's bare legs that she sent to him later that month.  If the company intended to place Lawrence in the nefarious light she claims, it would have published *that* photograph and her *repeated* attempts to make social plans or keep tabs on Buccigross.  *See* ECF 14-1, at 21.  But the evidence reveals ESPN intended only to show Lawrence and Buccigross had "a consensual, personal friendship that spanned months."  That is the light in which ESPN placed Lawrence.  Her own words confirm it to be true.[19]  ECF 14-6.

Unable to meet the "highly offensive to a reasonable person" standard, Lawrence opts to rewrite it.  She applies in its place a new standard: whether cherry-picked, anonymous Twitter

---

[18] Lawrence's failure to cite any document to support this claim is understandable; all relevant evidence in the record establishes its falsehood.  Pl. Br. 26.

[19] Lawrence offers no authority to support her claim that ESPN—which Lawrence admits is a news and media company—somehow became a non-media defendant by issuing a press release.  Pl. Br. 32.  The *Goodrich* standard applies to any "media defendant," not only those whose publications conform to journalistic standards of which Lawrence approves.  In any event, by Lawrence's own admission, the texts published as part of the ESPN Statement are all true.  Compl. ¶ 278 (Globe texts are accurate); ECF 14-6 (all ESPN Statement texts appear in Globe).

**ORAL ARGUMENT REQUESTED**

users view her in a light less favorable than she would like.[20] If that were the bar for a false light claim, any statement viewed by enough people would be actionable. But that is not the standard. Reasonable people understand that "portions of text messages" are not a complete set of text messages. ECF 14-4. And as Lawrence admits, the public's reaction was the same after the ESPN Statement as it was after the publication of the complete texts. *Id.* ¶¶ 278; 281. The reason is simple: the excerpted text messages and the full set each reveal to reasonable people the *same* consensual, personal, months-long friendship between Lawrence and Buccigross.

### D. Lawrence concedes the third-party tweets are not actionable.

Despite admitting the third-party tweets are "superfluous" and "not the *basis* for her claim," Lawrence opts to misrepresent them to the Court. She asserts that "*several* . . . were created the very morning ESPN released the [ESPN Statement] and the [third-party Twitter accounts'] tweets concern only Ms. Lawrence." Pl. Br. 33 (citations omitted). But the exhibit to which she cites reflects only two accounts: one which purportedly joined Twitter in June 2017, six months *before* the ESPN Statement; and one for which the exhibit shows only three tweets, *none* of which relate to Lawrence. Cohen Decl. Exh. 6. In any event, Lawrence concedes the tweets are protected opinion by failing to respond in any form to that argument.

## IV. CONCLUSION

For the reasons discussed above, the Court should dismiss Lawrence's ninth cause of action and award ESPN its costs and attorneys' fees.

---

[20] Notably, only three of the cherry-picked tweets Lawrence identifies contain any indication the author was reacting to the ESPN Statement as opposed to the Boston Globe's publication of the complete set. Pl. Br. 29.

**ORAL ARGUMENT REQUESTED**

Dated: June 15, 2018                    Respectfully submitted,


                                        By:     /s/ Raymond W. Bertrand
                                                Raymond W. Bertrand (CT 421237)
                                                PAUL HASTINGS LLP
                                                4747 Executive Drive
                                                12th Floor
                                                San Diego, California  92121
                                                Telephone:  1(858) 458-3000
                                                Facsimile:  1(858) 458-3005
                                                Email:  raymondbertrand@paulhastings.com

                                                Patrick W. Shea (CT403851)
                                                PAUL HASTINGS LLP
                                                200 Park Avenue
                                                New York, New York 10166
                                                Telephone:  1(212) 318-6000
                                                Facsimile:  1(212) 319-4090
                                                Email:  patrickshea@paulhastings.com

                                                Counsel for Defendants
                                                ESPN, Inc., Margaret Green, Donna Hricisko,
                                                Robert Gallo, and John Obringer

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2018, a copy of foregoing **REPLY IN SUPPORT OF ESPN, INC.'S SPECIAL MOTION TO DISMISS NINTH CAUSE OF ACTION IN PLAINTIFF'S COMPLAINT PURSUANT TO CONN. GEN. STAT. § 52-196a** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Raymond W. Bertrand
Raymond W. Bertrand (CT421237)
PAUL HASTINGS LLP
4747 Executive Drive
San Diego, CA 92121-3205
Telephone:  (858) 458-3000
Facsimile:  (858) 458-3005
Email:  raymondbertrand@paulhastings.com

**ORAL ARGUMENT REQUESTED**